## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

IN RE:     C. R. BARD, INC.,
              PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION

                                                                     MDL No. 2187

THIS DOCUMENT RELATES TO CIVIL ACTION NUMBERS:

| | |
|---|---|
| Cisson, et al. v. C. R. Bard, Inc. | 2:11-cv-00195 |
| Queen, et al. v. C. R. Bard, Inc. | 2:11-cv-00012 |
| Rizzo, et al. v. C. R. Bard, Inc. | 2:10-cv-01224 |
| Jones v. C. R. Bard, Inc. | 2:11-cv-00114 |

### ORDER
### (Bard's Motion for Protective Order to Seal)

Pending before the court is the Motion for Protective Order to Seal, filed by defendant C. R. Bard, Inc. ("Bard") on May 1, 2013 [Docket 240].[1] Plaintiffs responded on May 6, 2013 [Docket 248] and Bard replied on May 14, 2013 [Docket 254], making the matter ripe for decision.

I.     Background.

I had previously permitted the parties to submit confidential documents in support of *Daubert* and dispositive motions (and corresponding responses and replies) directly to the court rather than file them under seal for a very short period of time after filing, in order to resolve dedesignation and sealing issues. Thereafter, I directed the parties to resolve as many dedesignation and/or sealing issues as possible, and, if they were unsuccessful, I directed Bard to file a motion to seal and allowed a short response time for plaintiffs. This motion followed.

---

[1] Identical motions also are pending in *Queen* [Docket 240]*, Rizzo* [Docket 266]*,* and *Jones* [Docket 251], and this Order applies to those cases as well.

Briefly, Bard filed no confidential exhibits in support of its *Daubert* motions or replies in support thereof. However, Bard seeks to seal one confidential exhibit in support of its motions for partial summary judgment on punitive damages; confidential exhibits attached to Plaintiffs' Motion for Leave to Take Depositions of Roger Darois and Dan LaFever that were submitted in a similar manner to the court [Docket 204, Exhibits 5 and 6];[2] confidential exhibits filed by plaintiffs in support of their responses to Bard's *Daubert* motions; and confidential exhibits filed by plaintiffs in support of their responses to Bard's partial motions for summary judgment related to each of the bellwether plaintiffs.

II.     Motion to Seal.

I will first address Bard's motion to seal. I have considered the arguments of the parties, the Affidavits filed by Bard, and applicable case law, and make my rulings below.

A. Legal Standard.

Generally, "all documents filed for the Court's consideration in a civil case, even if not the subject of a judicial decision, are subject to presumptive access." *Walker Sys. v. Hubbell, Inc.*, 188 F.R.D. 428, 429 (S.D. W. Va. 1999); *see also Brown & Williamson Tobacco v. FTC*, 710 F.2d 1165, 1178 (6th Cir. 1983); *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 101 F.R.D. 34, 38 (C.D. Cal. 1984).

According to our Local Rules, public inspection of court documents "is necessary to allow interested parties to judge the court's work product in the cases assigned to it." Loc. R. Civ. P. 26.4(b)(1). As a result, "[t]he rule may be abrogated only in exceptional circumstances." *Id.*

Pursuant to Local Rule of Civil Procedure 26.4(b)(2), a motion to seal must be

---

[2] In addition to filing in the individual bellwether cases, this motion also was filed in MDL 2187. *See* 2:10-md-002187, Docket # 559.

accompanied by a memorandum of law that contains "(A) the reasons why sealing is necessary, including the reasons why alternatives to sealing, such as redaction, are inadequate; (B) the requested duration of the proposed seal; and (C) a discussion of the propriety of sealing, giving due regard to the parameters of the common law and First Amendment rights of access as interpreted by the Supreme Court and our Court of Appeals." Loc. R. Civ. P. 26.4(b)(2).

"The right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the First Amendment." *Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004) (*citing Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988)). The common law right affords presumptive access to all judicial records and documents. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *Stone*, 855 F.2d at 180. Materials that fall within the common law right may be sealed only if "countervailing interests heavily outweigh the public interests in access," and "[t]he party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption." *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988).

"In contrast to the common law, 'the First Amendment guarantee of access has been extended only to particular judicial records and documents.'" *Virginia Dep't of State Police*, 386 F.3d at 575 (quoting *Stone*, 855 F.2d at 180). Specifically, documents filed in connection with a summary judgment motion in a civil case fall within the First Amendment analysis. *Rushford*, 846 F.2d at 253. When discovery materials are used as "part of a dispositive motion, they los[e] their status as being 'raw fruits of discovery,' and that discovery, 'which is ordinarily conducted in private, stands on a wholly different footing than does a motion filed by a party seeking action by

3

the court.'" *Virginia Dep't of State Police*, 386 F.3d at 576 (quoting *Rushford*, 846 F.2d at 252). The public's First Amendment right of access can be overcome only when "the denial [of access] is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606-07 (1982); *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 15 (1986); *Virginia Dep't of State Police*, 386 F.3d at 573. "The burden to overcome a First Amendment right of access rests on the party seeking to restrict access, and that party must present specific reasons in support of its position." *Virginia Dep't of State Police*, 386 F.3d at 575.

Bard cites to the Fourth Circuit's unpublished decision in *Woven Elecs. Corp. v. Advance Group, Inc.*, 930 F.2d 913, Nos. 89-1580, 89-1588, 1991 WL 54118, at *6 (4th Cir. May 6, 1991), as support for the exception to the public's First Amendment right of access when a case involves trade secrets. (citing *In re Iowa Freedom of Info. Council*, 724 F.2d 658, 664 (8th Cir. 1983)). This is an unpublished per curiam decision of our Court of Appeals in which the court, while reviewing the propriety of unopposed closing of the courtroom during a trial based on misappropriation of trade secrets, notably recognized that "[t]he existence of this exception does not mandate the closure of every trial that involves trade secrets . . . ." *Woven Elecs.*, 1991 WL 54118, at *6. In *Woven Elecs.*, the court emphasized that "we are not announcing a blanket rule that the presence of trade secrets will in every case and at all events justify the closure of a hearing or trial. In these sensitive situations courts must proceed cautiously and with due regard to the unique facts involved in each case." *Id.* (citing *In re Iowa Freedom of Info. Council*, 724 F.2d at 664); *see also Level 3 Commc'ns, LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 581-82 (E.D. Va. 2009) (analyzing *Woven Elecs.*); *Johnson v. Baltimore City Police Dep't*, No.

4

ELH-12-2519, 2013 WL 497868, at *2 (D. Md. Feb. 7, 2013) (citing *Level 3 Commc'ns* and ruling on motion to seal summary judgment motion).

Whether the source arises from the First Amendment or the common law, it "may be abrogated only in unusual circumstances." *Stone*, 855 F.2d at 182. In *Virginia Dep't of State Police*, the court outlined the procedure I must follow in making a determination regarding sealing:

> When presented with a request to seal judicial records or documents, a district court must comply with certain substantive and procedural requirements. As to the substance, the district court first "must determine the source of the right of access with respect to each document," because "[o]nly then can it accurately weigh the competing interests at stake."
>
> A district court must then weigh the appropriate competing interests under the following procedure: it must give the public notice of the request to seal and a reasonable opportunity to challenge the request; it must consider less drastic alternatives to sealing; and if it decides to seal it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing. Adherence to this procedure serves to ensure that the decision to seal materials will not be made lightly and that it will be subject to meaningful appellate review.

386 F.3d at 576 (citations omitted).

B. Analysis.

Bard seeks to seal a total of six exhibits.[3] In summary, Bard seeks an order sealing (1) email chains containing supplier information which Bard argues would reveal trade secrets and other confidential, proprietary information regarding the identity of its suppliers and its "arrangements" for obtaining product from these suppliers; and (2) five documents that discuss Bard's research and development of mesh products and which, according to Bard, reveal the

---

[3] Plaintiffs dispute the number of documents Bard seeks to seal, noting that there are actually three email chains. Also, I note that all of the documents, including these documents, are used in multiple filings by plaintiffs, as is reflected in Exhibit B.

5

mental processes of Bard's employees and the company's development strategies relating to products in the highly competitive medical device industry.

        1. Emails.

The emails at issue consist of email chains in which Roger Darois, the Vice President of Research and Advanced Technologies for Davol, Inc. ("Davol"), a division of Bard, is either the author or recipient. These emails reveal supplier information regarding polypropylene resin. In his Affidavit, Mr. Darois states that

> [t]he emails contain confidential proprietary information regarding Davol and its suppliers, as the identities of Bard's suppliers and the company's methods for obtaining the raw polypropylene resin are closely guarded proprietary information. In addition, because the number of resin suppliers is extremely limited and those suppliers are reluctant (because of product liability concerns) to sell the material to medical device manufacturers, the public disclosure of Bard's arrangements for obtaining polypropylene resin could endanger Bard's access to this vital raw material.

(Darois Aff. [Docket 240-5], ¶ 9). Bard argues that the information contained in the emails is confidential and is protected trade secret. (Bard's Mem. in Supp. [Docket 240-1], at 4, 6).

Plaintiffs assert that Bard's arguments are nothing more than attempts to keep its supplier, investors and other lawyers and plaintiffs involved in these cases throughout the nation from finding out that it sold and continues to sell "products for permanent human implantation that contain a material that is not to be permanently implanted in humans." (Pls.' Resp. [Docket 248], at 6). Plaintiffs contend that sealing these documents furthers Bard's purported scheme of concealing Bard's conduct related to the polypropylene resin. *Id.*

The emails are attached as exhibits to plaintiffs' response to Bard's Motion for Partial Summary Judgment on Plaintiffs' Punitive Damages Claim (as well as a discovery motion, as noted above). Thus, I must analyze them under the more restrictive First Amendment standard

6

requiring that Bard show a compelling governmental interest. I note that a motion to seal has been filed and an opportunity given to challenge the request. Bard has not specifically indicated the duration of sealing, and I presume it seeks permanent sealing.

While sealing is generally a procedural issue subject to analysis using the precedent of our Court of Appeals, "[t]rade secret protection generally arises as a function of state law." *ATI Indus. Automation, Inc. v. Applied Robotics, Inc.*, 801 F. Supp. 2d 419, 425 (M.D.N.C. 2011). In this particular bellwether case, Georgia law applies. Under the Georgia Uniform Trade Secrets Act, a trade secret is defined as "information, without regard to form, including, but not limited to technical or nontechnical data, a formula, a pattern, a compilation, a program, a device, a method, a technique, a drawing, a process, financial data, financial plans, product plans, or a list of actual or potential customers or suppliers which is not commonly known by or available to the public" and which information "[d]erives economic values, actual or potential, from not being generally known" and "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Ga. Code Ann. § 10-1-761(4)(A)-(B).[4] As the Georgia statute evidences, trade secrets enjoy a "broad definition." *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 122 (D. Md. 2009) (citing 3 Jack B. Weinstein, *Weinstein's Federal Evidence* § 508.04 (2d ed. 2009) (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001 (1984)). However, "trade secrets are more than 'sensitive business information,' they are sophisticated, innovative methods or inventions that are the result of human creativity and ingenuity." *Id.*

---

[4] In the remaining three bellwether cases, the law of Georgia (*Rizzo*), North Carolina (*Queen*) and Mississippi (*Jones*) apply in defining a trade secret. Like Georgia, North Carolina and Mississippi have adopted the Uniform Trade Secrets Act and those state statutes contain similar language, **except** that the North Carolina and Mississippi statutes do not mention suppliers. N.C. Gen. Stat. Ann. § 66-152(3)*;* Miss. Code Ann. § 75-26-3(d).

I have carefully reviewed the emails at Bates stamped pages AVA2E8262831-34[5] and AVA2E8766668. Bard simply has not shown a compelling interest in sealing these documents necessary to overcome the First Amendment right of access. Bard does not elaborate and has not provided sufficient justification as to why the identity of its supplier and "arrangements" it made for obtaining the raw polypropylene resin are trade secrets. Bard makes general statements about how the disclosure of the identity of its supplier and "arrangements" for obtaining the polypropylene resin would endanger its access to this vital raw material, but such statements are not made with any specificity. *See Press-Enterprise Co.*, 478 U.S. at 15 ("The First Amendment right of access cannot be overcome by [a] conclusory assertion . . . ."). While such information may be sensitive business information that Bard would prefer to keep confidential, Bard has not met its burden of showing a compelling interest that would overcome the First Amendment presumption of public access.

In any event, even if the "arrangements" in these emails were considered trade secret, the content of these emails related to Bard's arrangement with its supplier has been on the public record since April 15, 2013, when plaintiffs filed their motion to compel. Bard did not move to protect the emails until it filed the instant motion on May 1, 2013, and has yet to move to seal the motion to compel itself. "There is no compelling governmental interest in protecting information that is already public." *VCA Cenvet, Inc. v. Chadwell Animal Hosp., LLC*, Civil No. JKB-11-1763, 2013 WL 1818681, at *2 (D. Md. Apr. 29, 2013).

Finally, while the content of these emails "may be embarrassing" for Bard, "this alone is insufficient to bar public disclosure" particularly where no showing has been made regarding the

---

[5] I note that Bard did not identify AVA2E8262831 in Exhibit B, but it did refer to the exhibit filed by plaintiffs which contains this page. As a result, I have considered it.

8

presence of a trade secret. *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 301 (N.D. Ill. 1993); *Brown & Williamson Tobacco Corp.*, 710 F.2d at 1179 (finding in the context of a common law analysis, that "[s]imply showing that the information would harm the company's reputation is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records").

2. Research and Development Exhibits.

The four remaining documents are internal memoranda that Bard contends reveal the internal thought processes, testing, analysis, hypothesis and research and development methods both for products in development at the time the documents were written and for future development. (Bard's Mem. in Supp. [Docket 241], at 5; Bigby Aff. [Docket 240-4], ¶ 10).

Bard argues that these documents are confidential, proprietary business documents that contain trade secrets. In addition, Bard points out that contrary to plaintiffs' assertions, Bard's Avaulta Solo and Plus transvaginal mesh products and various other Bard sling products currently are sold by Bard in Europe and Asia, and Bard continues to market pelvic mesh in the United States. (Bigby Aff. [Docket 240-4], ¶ 6).

I find that Bard's arguments that these documents are confidential, proprietary information containing trade secrets are largely conclusory and unsupported. *See Press-Enterprise Co.*, 478 U.S. at 15 ("The First Amendment right of access cannot be overcome by [a] conclusory assertion . . . ."). Bard's statements do not indicate the reasons why such information is trade secret or otherwise entitled to protection. Bard does not explain how such information, in the hands of a competitor, would inflict harm. Moreover, I have reviewed these documents, and I find the

9

plaintiffs' arguments as to why these documents are not trade secret convincing. Again, Bard has not met its burden sufficient to overcome the First Amendment presumption of public access.

  C. Procedure for Replacing Placeholder Exhibits.

With respect to the documents identified in Exhibit B, for each bellwether case, Bard is **DIRECTED** to submit to the court's law clerk via email (1) a chart as outlined below with the following identifying information for each exhibit identified in Exhibit B (to the extent exhibits are used in duplicate pleadings, each exhibit must have a separate entry) and (2) a copy of the exhibit for each entry on the chart:

| Case Name/ Number | Pleading to which Exhibit is attached | ECF # of Exhibit; i.e. Exhibit to be replaced | Bates Range |
|---|---|---|---|
| *Cisson v. C.R. Bard* 2:11-cv-195 | Plaintiff's Response to Bard's Punitive Damages Motion for Summary Judgment | 200-11 | AVA2E8753519-AVA2E8753524 |

It is **ORDERED** that Bard submit the chart and documents on or before **May 22, 2013**. Upon receipt, I will enter an order directing the Clerk, using the chart provided by Bard, to replace the placeholder exhibits with the unsealed documents submitted by Bard.

  III. Agreements Reached by the Parties.

Before filing the instant motion to seal, the parties agreed in all four bellwethers to the redaction and filing of Exhibit G or H (depending upon the case) attached to Bard's Motion for Partial Summary Judgment on Plaintiffs' Punitive Damages Claim, or in the Alternative to Bifurcate the Trial with a Separate Punitive Damages Phase. *See* Docket 215 in *Cisson*.

In the instant Motion at Exhibit A, Bard also provides a list of exhibits that the parties agreed to produce in redacted form. Bard attaches the heavily redacted exhibits at Exhibit E. Even if the parties agree to such redactions, I must ensure that the First Amendment protections are properly weighed and considered. I am not convinced that the documents have been only minimally redacted where absolutely necessary to protect against the disclosure of trade secret or other confidential information. Also, I note that as to Exhibits 2 and 3 to the plaintiffs' response to Bard's *Daubert* motion related to the treating physicians, Bard seeks to seal more Bates stamped pages than are attached in these exhibits. It is **ORDERED** that the parties revisit this issue in an attempt to either dedesignate these documents as confidential or further reduce the number of redactions.

It is **ORDERED** that for each bellwether case, Bard file a chart as outlined above, along with a set of newly dedesignated or redacted exhibits in each bellwether case on or before **May 24, 2013**. Upon receipt, the court will review these documents again and, assuming proper redactions have been made, direct the Clerk to immediately replace the exhibit holders with the dedesignated or redacted exhibits submitted by Bard. In future motions to seal, the court **DIRECTS** that Bard utilize this chart format with corresponding documents attached and submitted to the court *in camera* at the time of filing to avoid delay.

Based on the above, Bard's Motion to Seal [Docket 240] is **DENIED** as to Exhibit B, and taken under advisement as to Exhibit A.  It is further **ORDERED** that this Order applies to the identical motions filed in *Queen* [Docket 240], *Rizzo* [Docket 266], and *Jones* [Docket 251].

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: May 17, 2013

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE