IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE:      C. R. BARD, INC.,
            PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION

MDL No. 2187

THIS DOCUMENT RELATES TO CIVIL ACTION
NUMBERS:

| | |
|---|---|
| Cisson, et al. v. C. R. Bard, Inc. | 2:11-cv-00195 |
| Queen, et al. v. C. R. Bard, Inc. | 2:11-cv-00012 |
| Rizzo, et al. v. C. R. Bard, Inc. | 2:10-cv-01224 |
| Jones v. C. R. Bard, Inc. | 2:11-cv-00114 |

**MEMORANDUM OPINION AND ORDER**
(**Parties' Motions** *in Limine*)

Pending before the court are Plaintiffs' Motion in Limine No. 1 – 510(K) Clearance of the Avaulta Products by the United States Food and Drug Administration ("FDA"), or Lack of FDA Enforcement Action [Docket 265], Plaintiffs' Motion in Limine No. 2 – Surgical Consent Forms [Docket 266], and Defendant C. R. Bard, Inc.'s ("Bard") Initial Motions *in Limine* (Motion in Limine Nos. 1-27) [Docket 268].[1] The parties have filed responses and replies, and these motions are ripe for review. For the reasons discussed below, the plaintiffs' Motion *in Limine* No. 1 [Docket 265] is **GRANTED**, the plaintiffs' Motion *in Limine* No. 2 [Docket 266] is **DENIED**, Bard's motions *in limine* No. 24 [Docket 268] is **GRANTED in part** and **DENIED in part**, and Bard's remaining motions *in limine* [Docket 268] are **DENIED**.

---

[1] Docket citations are to the *Cisson* case. Identical motions are also pending in *Queen* [Dockets 269, 270, 273], *Rizzo* [Dockets 294, 295, 297] and *Jones* [Dockets 279, 280, 283] and this Order applies to those cases as well.

Also pending before the court is Defendant Bard's Motion for Leave to File Sur-Reply [Docket 298].[2] For reasons appearing to the court, this motion is **DENIED**.

## I.     Background

These cases are four of several thousand assigned to me by the Judicial Panel on Multidistrict Litigation and currently set for trial pursuant to Pretrial Orders # 32 and 72.[3] These MDLs involve use of transvaginal surgical mesh to treat pelvic organ prolapse or stress urinary incontinence. The four bellwether cases involve implantation of one or more products, but only the pelvic organ prolapse products are at issue. The plaintiffs in these cases allege injuries suffered as a result of Avaulta products implanted in Ms. Cisson, Ms. Queen, Ms. Rizzo, and Ms. Jones. The Complaints allege the following causes of action: 1) negligence; 2) strict liability – design defect; 3) strict liability – manufacturing defect; 4) strict liability – failure to warn; 5) breach of express warranty; 6) breach of implied warranty; 7) loss of consortium; and 8) punitive damages. (*See*, *e.g.*, Compl. [Docket 1]). The instant motions *in limine* involve the parties' efforts to exclude or limit certain evidence, arguments, and testimony at trial.

## II.    Discussion

The plaintiffs filed two motions *in limine* and Bard filed a total of twenty-seven. I note several points at the outset. First, the instant motions *in limine* were filed on June 3, 2013, one day prior to my June 4, 2013 Memorandum Opinions and Orders, and some of the arguments set forth by the parties have been rendered moot by my rulings. Second, to the extent that certain evidence, argument or testimony may be admissible for one purpose but perhaps not another, I will deny the motion and take up any specific objections at trial. Third, in the vast majority of its

---

[2]     Identical motions are pending in *Queen* [Docket 303], *Rizzo* [Docket 332], and *Jones* [Docket 318], and this Order applies to those cases as well.
[3]     Originally, there was a fifth case, *Smith v. C. R. Bard*, No. 2:10-cv-01355, which was terminated on February 22, 2013 pursuant to a Stipulation of Dismissal/Order.

motions *in limine*, Bard includes an argument under Federal Rule of Evidence 403. After review of the parties' arguments, rather than repeating myself in each section below, I will **DENY** Bard's motions *in limine* to the extent that these motions seek to exclude evidence under Rule 403, *except* where otherwise discussed below.[4]

In addition, an evidentiary ruling on many of the issues raised depends on the particular content of the evidence and argument, and the context in which the party seeks to introduce it. I **FIND** that for Bard's motions *in limine* Nos. 2, 6, 7, 8, 10, 11, 14, 15, 16, 20, 25, and 27, I simply cannot make a substantive ruling at this time without knowing the particular piece of evidence that the plaintiffs seek to introduce or argument that the plaintiffs seek to make, and the context in which the plaintiffs seek to introduce such evidence or make such argument.[5] In short, a blanket exclusion of such evidence, argument or testimony would be premature at this time, and I therefore **DENY** without prejudice Bard's motion *in limine* on these issues. The parties are represented by experienced and able trial counsel, and I trust that counsel for the parties know the rules of evidence. Additionally, I remind the parties once again of the twelve-day schedule for the entirety of each bellwether trial.

    **A.**    *The Parties' Motions in Limine Regarding FDA 510(k) Clearance*

The plaintiffs filed a motion *in limine* seeking to preclude any argument, evidence or testimony related to the FDA's 510(k) clearance or the FDA's lack of enforcement action regarding Bard's Avaulta products. Bard filed two motions *in limine* with regard to the plaintiffs' evidence and arguments related to the FDA 510(k) process.

After reviewing the motions, responses, and exhibits thereto, I **FIND** that evidence as to the FDA's 510(k) process and lack of enforcement action should be excluded under Federal Rule

---

[4] It appears that Bard's motion *in limine* # 8 is the only motion that does not include a Rule 403 argument.

[5] Where the motions merit a more detailed discussion, they are discussed below.

of Evidence 403 because of the danger of misleading the jury, confusing the issues, and unfair prejudice. Given the parties' filings throughout this case, it is abundantly clear that there would be a substantial mini-trial on the 510(k) process and enforcement should it be allowed.[6] In short, this evidence poses a substantial risk of misleading the jury to believe that FDA 510(k) clearance might be dispositive of the plaintiffs' state law claims, and if such evidence comes in via expert testimony, the expert would effectively be offering a legal conclusion.

Accordingly, the plaintiffs' motion *in limine* to exclude all evidence related to the FDA 510(k) process and enforcement is **GRANTED** and Bard's motions *in limine* on evidence related to the FDA 510(k) process and enforcement (Nos. 3, 12) are **DENIED as moot**. This necessarily means that both parties are precluded from introducing any evidence related to the FDA 510(k) process and enforcement.[7]

### B. *The Plaintiffs' Motion in Limine No. 2 – Surgical Consent Forms*

The plaintiffs seek to preclude any argument, evidence or testimony related to surgical consent forms signed by the plaintiffs. The plaintiffs argue that "the surgical consent forms have no bearing on any issue to be decided by the jury in these cases," and that "Bard cannot rely on a surgical consent form as evidence that a Plaintiff assumed the risk of a defective product." (Pls.' Mot. *in Limine* No. 2 [Docket 266], at 1-2). Finally, the plaintiffs argue that the consent form

---

[6] Bard states that it "is not arguing that its 510(k) clearance shows Plaintiffs' claims are expressly preempted, as this Court has already ruled on that issue." (Def. Bard's Resp. to Pls.' Mot. *in Limine* No. 1 [Docket 283], at 4). I note that my preemption holding is based on what the parties argued at summary judgment. While the plaintiffs moved for summary judgment on the federal preemption issue in its entirety, Bard only responded that it was entitled to assert a federal preemption defense to "prophylactically guard against any latent '*fraud on the FDA*' claims." (Def. Bard's Mem. of Law in Opp'n to Pls.' Mot. for Partial Summ. J. on Def.'s Affirmative Defenses [Docket 203], at 11).

[7] To be clear, this ruling is not intended to preclude all evidence or argument simply because the FDA might have been involved. For example, FDA publications that might be relied upon by expert witnesses might still be admissible, as long as it does not go towards the 510(k) process, clearance, enforcement, or other similar issues. Appropriate objections, if any, will be ruled upon at trial.

would be inadmissible in a malpractice action against the treating physician, and therefore "certainly has no place in this product liability litigation." (*Id.* at 3).

In my June 4, 2012 Memorandum Opinion and Order on the plaintiffs' summary judgment motion, I noted that the plaintiffs "have cited no binding authority to support their argument that the consent forms would be inadmissible in this case." (Mem. Op. & Order [Docket 272], at 16). At the very least, the consent forms may be relevant to Bard's assumption of risk defense. If Bard intends to use the forms for a different purpose, I will rule upon any further objections at trial. Accordingly, the plaintiffs' motion *in limine* on this issue is **DENIED**.

  **C.**   *Bard's Motions in Limine*

    **1.**   *No. 1 – Motion to Preclude any Evidence or Argument Concerning (1) any Material Safety Data Sheet for Polypropylene Resin, and (2) the Manner by Which Bard Procured Polypropylene Resin from Suppliers*

Bard seeks to preclude any evidence or argument regarding the Phillips Sumika Material Safety Data Sheet ("MSDS") and the methods by which Bard acquired polypropylene resin from its suppliers. Bard argues that (1) the MSDS "is a classic example of hearsay," (2) "Bard's procurement of raw materials has no relevance to the actual liability questions to be decided by the jury," and (3) the "probative value is substantially outweighed by the danger of unfair prejudice." (Bard's Motion *in Limine* No. 1 [Docket 268], at 5).

First, I **FIND** that evidence or argument as to the MSDS is admissible for several reasons. The MSDS falls within the hearsay exception found in Rule 803(17) as an "other compilation[] that [is] generally relied on by the public or by persons in particular occupations." Fed. R. Evid. 803(17). To the extent that the plaintiffs seek to offer the MSDS to show that the statements within it "were made or that they had some effect on the future actions of a listener," or "for the more limited purpose of providing relevant context or background," the MSDS is not

5

hearsay. *United States v. Castro-Lara*, 970 F.2d 976, 981 (1st Cir. 1992). To the extent that the plaintiffs introduce the statements in the MSDS through an expert witness, the statements fall within the hearsay exception found in Rule 803(18) as a "statement contained in a . . . pamphlet." Fed. R. Evid. 803(18). Finally, the MSDS falls within the residual hearsay exception under Rule 807.

Second, I **FIND** that evidence or argument as to the methods by which Bard acquired polypropylene resin is relevant as to the plaintiffs' substantive claims, as well as their claim for punitive damages. Accordingly, Bard's motion *in limine* on these issues is **DENIED**.

        **2.**      *No. 4 – Motion to Preclude any Evidence or Argument that Bard Owed or Breached an Independent Duty to Conduct Additional Testing or Inspection*

Bard seeks to preclude any evidence or argument that it owed or breached an independent duty to conduct additional testing or inspection. I agree that there is no independent claim for negligent testing or inspection at this point. However, evidence regarding Bard's testing or inspection generally, or lack thereof, may be relevant to whether Bard "knew or should have known" of the alleged dangers in the Avaulta products. It is highly probable that the admissibility of such evidence or argument depends on the context and method by which the plaintiffs seek to introduce them. Because the evidence may be relevant to the plaintiffs' claims, Bard's motion *in limine* on this issue is **DENIED** without prejudice.

        **3.**      *No. 5 – Motion to Preclude any Evidence or Argument Concerning Post-Implant Regulatory Communications and Developments*

Bard argues initially that the plaintiffs "should be limited to presenting evidence as to the events that took place prior to their injuries and that could be causally related to their claims." (Bard's Motion *in Limine* No. 5 [Docket 268], at 18). Bard then argues that (1) regulatory

developments cannot be used to establish causation and (2) the FDA's Public Health Notifications ("PHNs") and Advisory Committee Meeting ("ACM") are inadmissible hearsay.

First, post-implant evidence may be relevant as to certain issues—whether the product was defectively designed or whether the Avaulta product was capable of causing a particular type of injury. It may also be used to rebut or impeach evidence that Bard may introduce. Second, the PHNs and ACM are admissible under Federal Rule of Evidence 803(8). Accordingly, Bard's motion *in limine* on this issue is **DENIED**.

> **4.** *No. 6 – Motion to Preclude any Evidence or Argument Concerning Bard's Post-Implant Conduct*

Bard seeks to preclude "any evidence relating to Bard's conduct after the Avaulta Systems were implanted" as inadmissible under Rule 407. (Bard's Motion *in Limine* No. 6 [Docket 268], at 20). In sum, evidence of subsequent remedial measures is inadmissible to prove "negligence; culpable conduct; a defect in a product or its design; or a need for warning or instruction." Fed. R. Evid. 407. However, the evidence may be admitted "for another purpose, such as impeachment or – if disputed – proving ownership, control, or the feasibility of precautionary measures." *Id.* In other words, the admissibility of such evidence or argument depends on the context and method by which the plaintiffs seek to introduce them. Accordingly, I **DENY** without prejudice Bard's motion *in limine* on this issue.

> **5.** *No. 9 – Motion to Preclude any Evidence or Argument of Congressional Committee Letters to or Concerning C. R. Bard, Inc. and Related Matters*

Bard seeks to exclude evidence related to proceedings by the United States Senate Special Committee on Aging and correspondence between the Special Committee and Bard. Bard argues that this evidence is inadmissible hearsay and irrelevant because it occurred after the bellwether plaintiffs were implanted with their respective Avaulta products. First, the letter to

7

Bard falls within the public records hearsay exception under Federal Rule of Evidence 803(8). The Fourth Circuit has held that "[t]he admissibility of a public record specified in [Rule 803(8)] is assumed as a matter of course unless there are sufficient negative factors to indicate a lack of trustworthiness." *Zeus Enters., Inc. v. Alphin Aircraft, Inc.*, 190 F.3d 238, 241 (4th Cir. 1999). "The party opposing admission has the burden to establish unreliability." *Id.* Bard has not met its burden here. Second, the relevancy of the letter and Bard's response may depend on the particular contents that the plaintiffs seek to introduce and the context in which the plaintiffs may seek to use the letter. Accordingly, I **FIND** that a blanket exclusion of such evidence would be premature at this time, and therefore I **DENY** without prejudice Bard's motion *in limine* on this issue.

    6.  *No. 13 – Motion to Preclude any Evidence or Argument that (1) Bard Owed or Breached a Duty to Warn Plaintiffs Directly, or (2) Bard Owed or Breached a Duty to Train Plaintiffs' Physicians*

Bard seeks to preclude any "claim or argument" that (1) "Bard owed and breached a duty to provide warnings to Plaintiffs directly" and (2) that "Bard owed and breached a duty to provide training to the implanting physicians." (Bard's Motion *in Limine* No. 13 [Docket 268], at 40). The plaintiffs argue that they "do not contend that . . . Bard owed a duty to warn the Plaintiffs directly beyond their duty to warn the implanting doctor." (Pls.' Resp. to Bard's Motion *in Limine* No. 13 [Docket 285], at 26). Furthermore, although the plaintiffs' Master Complaint includes one paragraph in the factual background section regarding training, there is no *claim* in the Master Complaint for negligent training. (*See* Master Compl., No. 2:10-md-2187 [Docket 351-1], at 18-34). However, it is highly probable that the admissibility of evidence or argument regarding training depends on the context and method by which the plaintiffs seek to

8

introduce them. Accordingly, Bard's motion *in limine* on these issues is **DENIED** without prejudice.

### 7. No. 14 – Motion to Preclude any Evidence or Argument Related to Product Complaints, Adverse Event Reports, and Medical Device Reports Concerning Patients Other than Plaintiff

Bard seeks to preclude "evidence of product complaints, adverse event reports (AERs), or Medical Device Reports (MDRs) . . . in an attempt to establish the mesh caused the alleged complications." (Bard's Motion *in Limine* No. 14 [Docket 268], at 43). Bard argues three points: (1) that complaints, AERs and MDRs are inadmissible and hearsay and (2) that the reports are not probative, relevant evidence of causation or notice.

MDRs are inadmissible to the extent that they are covered under 21 U.S.C. § 360i(b)(3).[8] However, there are MDRs that do not fall within the scope of § 360i and are therefore admissible. *See Chism v. Ethicon Endo-Surgery, Inc.*, No. 4:08CV00341-WRW, 2009 WL 3066679, at *1 (E.D. Ark. Sept. 23, 2009) (finding that "no report made by a device user facility" may be admissible, but that "§ 360i does not prohibit the admissibility of manufacturer reports into evidence"). Additionally, to the extent they might be hearsay, they fall within the exceptions of Federal Rule of Evidence 803(6) and 803(8). *See id.* at *2. Additionally, to the extent an expert might rely upon AERs in reaching certain opinions, "[t]he issues of hearsay that are necessarily implicated with [AERs] should not preclude this testimony because experts may

---

[8] This section states:

(3) No report made under paragraph (1) by –
(A) a device user facility,
(B) an individual who is employed by or otherwise formally affiliated with such a facility, or
(C) a physician who is not required to make such a report,
shall be admissible into evidence or otherwise used in any civil action involving private parties unless the facility, individual, or physician who made the report had knowledge of the falsity of the information contained in the report.

21 U.S.C. § 360i(b)(3).

9

use otherwise inadmissible evidence to reach their opinions." *Mahaney ex rel. Estate of Kyle v. Novartis Pharms. Corp.*, 835 F. Supp. 2d 299, 312 (W.D. Ky. 2011). Finally, courts have held that such reports may show notice and provide support for causation. *See id.*; *Rider v. Sandoz Pharms. Corp.*, 295 F. 3d 1194, 1199 (11th Cir. 2002) (finding that "while [case reports] may support other proof of causation, case reports alone ordinarily cannot prove causation"). As the plaintiffs' own cases note, however, the evidence of other injuries must be substantially similar to those in the case at bar. *See id.*; *see also Soldo v. Sandoz Pharms. Corp.*, 244 F. Supp. 2d 434, 550 (W.D. Pa. 2003).

In sum, there are simply too many factors that might determine whether the product complaints, AERs, and MDRs might be admissible. Without knowing the specific contents of any complaints, AERs or MDRs that the plaintiffs may seek to introduce, or how the plaintiffs might seek to use or introduce these complaints and reports, I cannot make a substantive ruling at this time. Accordingly, I **FIND** that a blanket exclusion of this evidence would be premature at this time, and therefore I **DENY** without prejudice Bard's motion *in limine* on this issue.

> 8. *No. 17 – Motion to Preclude any Evidence or Argument Concerning Marketing and Promotional Materials not Identified as Having been Seen by Plaintiffs' or Their Prescribing Physicians*

Bard seeks to preclude "evidence of marketing or promotion materials that were not identified as having been seen by Plaintiffs or their prescribing physicians." (Bard's Motion *in Limine* No. 17 [Docket 268], at 52). Bard focuses largely on the relevancy of these materials to the plaintiffs' failure to warn claims. These materials may be relevant to the plaintiffs' other claims, including negligence and punitive damages. Any such relevancy will be determined at trial pursuant to any appropriate objections at that time. Accordingly, Bard's motion *in limine* on this issue is **DENIED**.

        9.    *No. 18 – Motion to Preclude any Evidence or Argument that the Avaulta Products can Cause Persistent Delayed Healing, Dehiscence, Abscess or Other Alleged Complications not Experienced by Plaintiffs*

Bard seeks to preclude "evidence or argument regarding alleged complications purportedly caused by Bard's Avaulta products" that were not experienced by the particular bellwether plaintiff. (Bard's Motion *in Limine* No. 18 [Docket 268], at 54). From the parties' arguments, it appears that there are two steps in the complications suffered by Avaulta patients. First, the collagen component of the Avaulta Plus product is alleged to increase the inflammatory response of the body. This inflammatory response may then lead to a host of other complications, including erosion, persistent delayed healing, dehiscence and abscess, among others. Evidence of a heightened inflammatory response appears relevant as to all bellwether plaintiffs; it is the more specific complications that the inflammatory response may lead to which are at issue here. Evidence as to Bard's knowledge of these more specific complications may very well be relevant to certain issues in this case. Accordingly, Bard's motion *in limine* on this issue is **DENIED**.

        10.    *No. 19 – Motion to Preclude any Evidence or Argument Concerning Irrelevant and Prejudicial Issues Related to Certain Expert Witnesses*

Bard seeks to exclude "information about expert witnesses that is unrelated to their expertise and opinions in these cases." (Bard's Motion *in Limine* No. 19 [Docket 268], at 57). For example, Bard would like to exclude (1) evidence as to consulting agreements that an expert witness may have reached with Bard; (2) evidence as to how an expert witness has performed in past medical board examinations; (3) testimony given by expert witnesses in prior trials; and (4) evidence as to any alleged impropriety concerning Dr. Vincent Lucente regarding his employment separation from Lehigh Valley Hospital. The evidence that Bard seeks to exclude

11

tends to be relevant as to the credibility of the expert witnesses. Accordingly, Bard's motion *in limine* on these issues is **DENIED**.

    **11.** ***No. 21 – Motion to Preclude any Evidence or Argument Concerning Bard's Intent, Motives, and Ethics***

Bard seeks to preclude evidence "pertaining to Bard's intent, motives, and ethics, including . . . evidence or argument at trial suggesting that Bard had a financial motive to downplay potential risks associated with the use of the Avaulta products." (Bard's Motion *in Limine* No. 21 [Docket 268], at 62). The evidence Bard seeks to exclude is clearly relevant to the issue of punitive damages, and therefore Bard's motion *in limine* on this issue is **DENIED**.[9]

    **12.** ***No. 22 – Motion to Preclude Evidence or Argument Concerning the Alleged Pain, Suffering, and/or Impact of Plaintiffs' Alleged Injuries on their Children, Family, or Friends***

Bard seeks to exclude "evidence of the pain, suffering, and/or the impact of Plaintiffs' alleged injuries on their friends, children, and family members . . . ." (Bard's Motion *in Limine* No. 22 [Docket 268], at 65). Bard argues that this evidence is irrelevant. Contrary to Bard's assertion, however, this evidence is relevant to the plaintiffs' damages insofar as the plaintiffs have allegedly suffered adverse effects on their relationships and ability to enjoy activities with their friends, children, and family members. Any such relevancy will be determined at trial pursuant to any appropriate objections at that time. Accordingly, Bard's motion *in limine* on this issue is **DENIED**.

---

[9] My June 4, 2013 Order bifurcating the trial of this matter clearly states that "evidence regarding [Bard's] liability for punitive damages in the first phase" is not *per se* precluded. (Mem. Op. & Order [Docket 273], at 20).

**13.** *No. 23 – Motion to Preclude any Argument or Evidence of a Relationship Between Polypropylene or the Avaulta System and Sarcomas or Cancer*

Bard seeks to preclude "argument regarding the causation or contribution of the Avaulta System or polypropylene to the development of sarcomas or other type of cancer in animals or humans." (Bard's Motion *in Limine* No. 23 [Docket 268], at 67). From the plaintiffs' response, it appears that they seek to use certain peer-reviewed, published articles to potentially cross-examine Bard witnesses. These peer-reviewed, published articles apparently discuss a link between the chronic inflammatory responses as a result of polypropylene mesh implants and cancer. Accordingly, this argument or evidence is of some relevance to the case.

However, particularly given that there is no evidence that any of the bellwether plaintiffs suffered from sarcomas or cancer as a result of the Avaulta products, and that the use of any such evidence would likely only be to cross-examine Bard witnesses, this evidence has somewhat limited relevance to the case. On the other hand, references to cancer often evoke juror sympathy to the extent that the risk of unfair prejudice is highly likely to occur. *See, e.g.*, *United States v. Brooke*, 4 F.3d 1480, 1486 (9th Cir. 1993); *Jackson v. Johns-Manville Sales Corp.*, 750 F.2d 1314, 1321 (5th Cir. 1985). Although I **DENY** Bard's motion *in limine* on this issue at this point in time, the plaintiffs are strongly cautioned to tread carefully if they intend to offer such arguments or evidence.

**14.** *No. 24 – Motion to Preclude Inflammatory and Prejudicial Statements or Evidence During Opening Statements*

Bard seeks, in this motion, to "(1) limit Plaintiffs' use of inflammatory statements in opening statements; and (2) preclude recorded deposition testimony, whether video or transcribed, from being played or read during opening statements." (Bard's Motion *in Limine* No. 24 [Docket 268], at 70). The parties agree that opening statements are to provide the jury

with an introduction to the case and to allow the parties to outline the facts they seek to prove at trial. To the extent Bard identifies inflammatory statements as those "concerning Bard's alleged corporate culture or motivations," they appear to be alleged facts going towards punitive damages. (*Id.*).

With respect to deposition testimony, I **FIND** that the use of video clips during opening statements is precluded as to all parties, but I will not preclude the parties from summarizing or quoting deposition testimony in their opening statements. To the extent Bard argues Federal Rule of Evidence 106, quoting from or summarizing deposition testimony during an opening statement is not "introducing" the deposition. *See* Wright et al., 21A Fed. Prac. & Proc. Evid. § 5075 n.46 (2d ed.) ("Should the lawyer read from the document during opening statements, the opponent could not, we think, invoke Rule 106 to require introduction at that point.").

Accordingly, Bard's motion on these issues is **GRANTED** with respect to the use of video clips during opening statements and **DENIED** otherwise. To be clear, the preclusion of the use of video clips extends to both parties.

    15.  *No. 25 – Motion to Preclude any Evidence or Argument Concerning the Parties Litigation Conduct*

Bard seeks to preclude any argument or evidence concerning:

(A)   Evidence of mediation or settlement negotiations;
(B)   Bard's designation of any documents as confidential or any suggestion that Bard's actions were improper or an attempt to keep certain documents secret; and
(C)   Evidence of Bard's litigation conduct and of Court rulings such as motions *in limine* or objections during discovery.

(Bard's Motion *in Limine* No. 25 [Docket 268], at 73). With respect to evidence of mediation or settlement negotiations, Bard is correct that under Federal Rule of Evidence 408(a), such evidence is not admissible "either to prove or disprove the validity or amount of a disputed claim

14

or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). However, under Rule 408(b), this evidence may be admitted for other purposes. With respect to the other two categories of argument or evidence that Bard seeks to exclude in this motion, although it appears highly unlikely that these issues would become relevant at trial, it is impossible to determine the relevancy of any argument or evidence concerning these issues at this stage. Accordingly, I **FIND** that a blanket exclusion of such evidence and argument would be premature at this time, and therefore I **DENY** without prejudice Bard's motion *in limine* on this issue.

16. *No. 26 – Motion to Preclude any Evidence or Argument Concerning Bard's Financial Information or Condition*

Bard seeks to preclude evidence of its financial information or condition. I note that I denied Bard's motion for summary judgment on the issue of punitive damages, and that I bifurcated the trial into two phases, where liability (for both compensatory and punitive damages) and the amount of compensatory damages will be determined in phase one, and the amount of punitive damages, if any, will be determined in phase two. Evidence of Bard's financial information and condition are certainly relevant as to the amount of punitive damages, and therefore relevant to phase two of the trial. To the extent that certain financial information relates to Bard's motives, it may be relevant to the question of liability for punitive damages in phase one and I will rule upon any objections on a case by case basis at trial. Bard's motion *in limine* on this issue is **DENIED**.

17. *No. 27 – Motion to Preclude Evidence or Argument that Prejudicially Appeals to the Sympathy of the Jury*

Bard does not identify any specific evidence or argument in this motion, but rather "anticipates that Plaintiffs will attempt at trial to introduce prejudicial evidence or argument . . .

." (Bard's Motion *in Limine* No. 27 [Docket 268], at 79). Bard argues first that (1) statements or references appealing to the emotions of the jurors and (2) evidence, testimony, or argument concerning Bard's size, resources, or overall financial condition should be excluded.

To the extent that Bard seeks to preclude improper evidence and arguments, I cannot make a substantive ruling without knowing the specific evidence or argument that the plaintiffs seek to make and the context in which they do so. Accordingly, I **DENY** without prejudice Bard's motion *in limine* on this issue.

In addition, I note that my order bifurcating the trial provides that the *amount* of punitive damages, if any, will be determined in phase two, but *liability* (for both compensatory and punitive damages) and amount of compensatory damages will be determined at phase one. Accordingly, evidence, testimony and argument concerning Bard's size, resources, and overall financial condition will be relevant during some phase of the trial, and should the plaintiffs offer evidence irrelevant to that particular phase, any objections will be taken up at trial.

### III. Conclusion

For the reasons discussed above, it is **ORDERED** that the plaintiffs' Motion *in Limine* No. 1 (*Cisson* [Docket 265], *Queen* [Docket 269], *Rizzo* [Docket 294], *Jones* [Docket 279]) is **GRANTED**, the plaintiffs' Motion *in Limine* No. 2 (*Cisson* [Docket 266], *Queen* [Docket 270], *Rizzo* [Docket 295], *Jones* [Docket 280]) is **DENIED**, Bard's motions *in limine* No. 24 (*Cisson* [Docket 268], *Queen* [Docket 273], *Rizzo* [Docket 297], *Jones* [Docket 283]) is **GRANTED in part** and **DENIED in part**, and Bard's remaining motions *in limine* (*Cisson* [Docket 268], *Queen* [Docket 273], *Rizzo* [Docket 297], *Jones* [Docket 283]) are **DENIED**.

It is further **ORDERED** that Bard's motion for leave to file sur-reply (*Cisson* [Docket 298], *Queen* [Docket 303], *Rizzo* [Docket 332], and *Jones* [Docket 318]) is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: June 27, 2013

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE